# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 6493 | **DATE** | 12/23/2003 |
| **CASE TITLE** | BRITTON vs. WERHAHN KG | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   **Defendant Werhahn KG's motion to dismiss is denied.**

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | DEC 2 4 2003 | |
| | Notified counsel by telephone. | | date docketed | **9** |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| DW | courtroom deputy's initials | | Date/time received in central Clerk's Office | mailing deputy initials |

ALVINA BRITTON,

Plaintiff,

v.

D.A. STUART COMPANY, a Delaware Corporation; and WILH. WERHAHN KG, a Federal Republic of Germany corporation,

Defendants.

No. 03 C 6493
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

Plaintiff Alvina Britton is a former employee of Defendant D.A. Stuart Company, a Delaware corporation, whose headquarters are located in Warrenville, Illinois. Britton alleges, among other things, that D.A. Stuart discriminated against her because of her race by offering her a promotion which would have required her to relocate from Chicago to Detroit. D.A. Stuart is a wholly-owned subsidiary of Safeway GMBH, a German corporation that is owned by Defendant Wilhelm Werhahn KG, also a German corporation. Werhahn does not have officers anywhere in Illinois or elsewhere in the United States, nor is it licensed to conduct business in Illinois or anywhere else in the United States. Werhahn also has no agent for service of process, owns no property, and maintains no bank accounts or telephone listing in Illinois or the United States. Britton has never been employed by, or provided services to, Werhahn.

Pursuant to Federal Rule of Civil Procedure 12(b)(2), Werhahn moves to dismiss itself from this lawsuit for lack of personal jurisdiction. For purposes of a 12(b)(2) motion, all well-pleaded allegations in the complaint are treated as true, *Tobin for Governor v. Illinois State Bd. of Elections*, 268 F.3d 517, 521 (7th Cir. 2001), and Britton has the burden of proving the

9

existence of personal jurisdiction, *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997). However, if any material facts are in dispute, I must hold an evidentiary hearing to resolve them, at which point Britton must prove what is alleged. Until such a hearing takes place, Britton need only make out a prima facie case of personal jurisdiction. *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707 (7th Cir. 2002).

To be subject to personal jurisdiction, a nonresident defendant must have "minimum contacts" with the forum state and must have "purposefully availed itself" of the privilege of conducting activities within the forum state. *International Shoe Co. v. Washington*, 326 U.S. 310, 315 (1945). "Crucial to the minimum contacts analysis is showing that the defendant should reasonably anticipate being haled into court [in the forum state] because the defendant has purposefully avail[ed] itself of the privilege of conducting activities there." *RAR, Inc.*, 107 F.3d at 1277 (quotations omitted). The "purposeful availment" requirement ensures that a nonresident defendant will not be forced to litigate in a jurisdiction as a result of random contacts with the forum or the unilateral activity of another party. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985). Exercise of personal jurisdiction over a nonresident defendant must be reasonable and must not violate traditional notions of fair play and substantial justice. *Id.* at 476. Factors which I may consider in determining the reasonableness of exercising personal jurisdiction over a nonresident defendant include the state's interest in providing a forum to the plaintiff, the burden of defense on the defendant, the burden of prosecution elsewhere on the plaintiff, the extent to which the claim is related to the defendant's local activities, and avoidance of a multiplicity of suits. *Asahi Metal Indus. Co., Ltd. v. Superior Court of California*, 480 U.S. 102, 115 (1987).

In this case, Britton may establish personal jurisdiction over Werhahn as the parent company of its subsidiary D.A. Stuart by showing that Werhahn "actually controls the activities of the subsidiary." *Garshman v. Universal Resources Holding, Inc.*, 641 F.Supp. 1359, 1364 (D.N.J. 1986), *aff'd*, 824 F.2d 223 (3rd Cir. 1987). I must then look at the totality of the circumstances, *id.*, to determine whether D.A. Stuart is the "alter ego" of Werhahn, *Clark v. Matsushita Elec. Indus. Co., Ltd.*, 811 F.Supp. 1061, 1067 (M.D.Pa. 1993).[1] Here, Werhahn argues that Britton has failed to make her required showing.

Britton alleges that at separate times in 1996 and 1998, Michael Werhahn, a member of the Werhahn Board of Directors, served as chief executive of D.A. Stuart until a replacement was decided upon. She also alleges that while employed at D.A. Stuart, she had several face-to-face meetings with Michael Werhahn semi-annually upon his and other Werhahn Board members' visits to D.A. Stuart's Chicago manufacturing facility. During the meetings, Michael Werhahn allegedly informed her of how much additional machinery and equipment was being invested in D.A. Stuart and inquired of her what new equipment she had purchased, what equipment she needed, whether she had enough staff working under her supervision, and how the interrelationship between quality control and production was working out. Britton further alleges that she conducted inspection tours for Werhahn throughout the laboratory and plant, and that she met with Michael Werhahn at D.A. Stuart's Philadelphia plant in 1999. Finally, she claims that Werhahn made the decision to close D.A. Stuart's Philadelphia plant (based in part on information collected from her) and the decision to close D.A. Stuart's Los Angeles plant.

---

[1] In ruling on a motion to dismiss for lack of personal jurisdiction, I may consider matters outside the pleadings, such as affidavits and other materials submitted by the parties. *McIlwee v. ADM Indus., Inc.*, 17 F.3d 222, 223 (7th Cir. 1994).

3

Werhahn argues that even if all of the aforementioned allegations are true, they are still not sufficient for personal jurisdiction because they demonstrate nothing more than an affiliation that is inherent in every parent-subsidiary relationship. *See Andresen v. Diorio*, 349 F.3d 8 (1st Cir. 2003); *Papa v. Katy Indus., Inc.*, 166 F.3d 937 (7th Cir. 1999); *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56 (4th Cir. 1993); *Moore v. The St. Paul Cos., Inc.*, NO. CIV. A. 94-1329, 1995 WL 11187 (D.N.J. Jan. 3, 1995); *Huang v. Sentinel Govt. Sec.*, 657 F.Supp. 485 (S.D.N.Y. 1987). However, the facts in each of these cases can be distinguished from the factual allegations here.

In *Andresen*, the Fourth Circuit held that an out-of-state parent corporation's alleged financial and policy control over its Massachusetts subsidiary was not sufficient for personal jurisdiction, absent a showing that the parent's control was so pervasive and detailed as to invoke sham or alter ego labels. 349 F.3d at 12. All that the plaintiff presented in support of personal jurisdiction was evidence that the subsidiary has employed an interim president who formerly worked for the parent and that the parent was generally aware of its subsidiary's business plans. *Id.* at 12-13. However, the facts here may demonstrate Werhahn's intimate involvement with the day-to-day operations of D.A. Stuart, including having a current Board member and family member twice serve as interim CEO, repeatedly meeting with D.A. Stuart personnel (including Britton) regarding the management and operations of the company, and making major decisions regarding capital investments and operations. Although these facts may not serve as the "basis for [Britton's underlying] claim" because of the 300-day statute of limitations for filing an EEOC charge, *see Rauen v. United States Mfg. Ltd. Partnership*, 161 F.Supp.2d 899, 907 (N.D. Ill. 2001), they are certainly relevant for purposes of whether to pierce D.A. Stuart's corporate veil.

4

In *Papa*, the Seventh Circuit held that conditions were not present for "piercing the corporate veil" when a parent and its subsidiary had not neglected their respective corporate forms. 166 F.3d at 943. Unfortunately, *Papa* is scarce on factual details, and so a comparison with the present case is not possible. Nonetheless, it may be possible to conclude here that Werhahn neglected its and D.A. Stuart's respective corporate forms through its alleged intimate involvement with the day-to-day operations of D.A. Stuart. Therefore, this case is also distinguishable.

In *Mylan Labs., Inc.*, a Maryland court held that it did not have personal jurisdiction over a foreign parent corporation, even though the parent's third-tier subsidiary conducted business in Maryland, where there were no common officers or directors, corporate functions were rigidly separated, the parent did not exert control over management or operating policies of the subsidiary, and the parent was not authorized to conduct any business in the United States, though it indirectly owned 100 percent of the subsidiary's stock and the alleged criminal acts of the subsidiary's employees were allegedly done for the benefit of the parent, where there was no evidence of an intent to benefit the parent or of the parent's knowledge. *Id.* at 63. In affirming the dismissal of the company, the Fourth Circuit noted that it could "[not] say that the district court erred in holding that the parent-subsidiary relationship between [the companies was] insufficient to justify the exercise of personal jurisdiction over [the parent] by the Maryland courts." *Id.* at 63. Unlike in *Mylan Labs., Inc.*, however, the factual allegations here may demonstrate that Werhahn and D.A. Stuart shared at least one common officer, that corporate functions were not rigidly separated, and that Werhahn exerted significant control over the management or operations of D.A. Stuart.

In *Moore*, a New Jersey court held that an out-of-state parent corporation's Chief Administrative Officer's multiple visits to the subsidiary's New Jersey office, where the subsidiary was headquartered, and membership on the subsidiary's board of directors along with the fact that six of the sixteen members of the subsidiary's board of directors were officers of the parent corporation and that the parent and subsidiary were in constant contact on matters of operation, policy, and reporting profits to the corporate parent were not sufficient to establish the personal jurisdiction of either the parent corporation or the CAO personally because the court found that it "must presume that both [the CAO's] directorship and his visits were connected to his duties as an executive of the parent corporation in the normal course of overseeing its subsidiary." 1995 WL 11187, at *6-7. Unlike in *Moore*, however, I cannot presume based on the factual allegations here that Michael Werhahn's and the company's involvement with D.A. Stuart were connected with their "duties . . . in the normal course of overseeing [a] subsidiary." To the contrary, the facts may demonstrate significant control over the management or operations of D.A. Stuart or at least much more than mere oversight.

Finally, in *Huang*, a New York court held that no personal jurisdiction existed over a British parent corporation where the parent corporation's CFO visited the subsidiary's facility in New York, during which he approved the subsidiary's entry into a new business. *Id.* at 490. Once again, however, the facts here may demonstrate much more significant involvement than simple visits and mere approval of new business endeavors.

In sum, treating Britton's factual allegations as true, she has demonstrated enough facts showing that Werhahn may have controlled D.A. Stuart over the last several years, certainly enough facts (if ultimately true) to possibly justify piercing D.A. Stuart's corporate veil.

6

Accordingly, I find that Werhahn is subject to personal jurisdiction here. However, should Werhahn desire to move for reconsideration, I hereby grant it leave to do so, but caution that any further proceedings on this matter will necessitate a period of discovery, further briefing, and a likely hearing on the issue.

For the reasons above, Werhahn's Motion to Dismiss is DENIED.

ENTER:

James B. Zagel
United States District Judge

DATE: 23 Dec 2003